EMMA MOEHLENKAMP, JOHN PLACKEMEIER AND MRS. S. B. FORBIS, APPELLANTS, v. THE SAVINGS TRUST COMPANY OF ST. LOUIS, IN CHARGE OF O. H. MOBERLY, COMMISSIONER OF FINANCE, FOR LIQUIDATION, RESPONDENT.—108 S. W. (2d) 605.

St. Louis Court of Appeals.   Opinion filed September 14, 1937.

*Igoe, Carroll & Keefe* and *Paul G. Ochterbeck* for respondent.

*Brownrigg & Muldoon* and *J. W. Faris* for appellants.

*Sidney B. McClanahan* of Counsel.

SUTTON, C.—In this action the plaintiffs seek to have a prefer-ence adjudged in their favor for $2,660.44 against the assets of The Savings Trust Company of St. Louis, which is in charge of the finance commissioner for liquidation.

The action was commenced by Mary C. Plackemeier as trustee for Emma Moehlenkamp, John Plackemeier and Mrs. S. B. Forbis. In her original claim filed with the finance commissioner she alleged that there was due her as trustee from The Savings Trust Company $2660.44, being the balance due on a savings account, and asked that she be allowed a preference for that amount, "because the money was held by Mary C. Plackemeier as trustee for the use and benefit of Emma Moehlenkamp, John Plackemeier and Mrs. S. B. Forbis, after the death of Mary C. Plackemeier." The claim was subscribed

and sworn to before a notary public and was filed with the finance commissioner on May 4, 1933, and was approved by him on September 15, 1933.

Mary C. Plackemeier died in February, 1934. Thereafter, on November 15, 1934, plaintiffs, Emma Moehlenkamp, John Plackemeier and Mrs. S. B. Forbis, filed in the circuit court an amended claim. In this amended claim plaintiffs allege "that on April 5, 1932, Mary C. Plackemeier deposited in The Savings Trust Company of St. Louis $2660.44, with instructions that said sum was to be held by said Savings Trust Company and not be drawn upon but to be paid upon the death of Mary C. Plackemeier to Emma Moehlenkamp, John Plackemeier and Mrs. S. B. Forbis; that said bank accepted said deposit in the name of Mary C. Plackemeier, trustee for Emma Moehlenkamp, John Plackemeier and Mrs. S. B. Forbis; that on February 21, 1934, Mary C. Plackemeier died, leaving surviving her Emma Moehlenkamp, John Plackemeier and Mrs. S. B. Forbis, the sole beneficiaries of said trust created by Mary C. Plackemeier."

The evidence shows that The Savings Trust Company account upon which the claim is based was opened on April 5, 1932, with a deposit of $2000 by Mary C. Plackemeier, who made an X mark on the signature card and put her finger prints upon the card. The signature card merely shows that the account was opened by "Mary C. Plackemeier, trustee for Emma Moehlenkamp, John Plackemeier and Mrs. S. B. Forbis." The evidence also shows that subsequent deposits were made and interest credited at frequent intervals so that the aggregate amount of the deposits, including interest credited, was $2660.44 at the time the trust company was put in charge of the finance commissioner.

Mrs. S. B. Forbis testified as follows:

"I am a daughter of Mary C. Plackemeier. I was with Mrs. Plackemeier when this account was originally opened. In arranging for the opening of the account she talked to Mr. Dowling. She had this money with her. She asked Mr. Dowling to take the money and 'put it where it was safe,' and after her death he was to pay it to her children. She stated to him that she did not expect to withdraw the money if she was able not to. Mr. Dowling said the best way to place it was as the way the card is made out, and he took her over to Mr. Alexander and asked Mr. Alexander to look after the filling out of the card. She made out this account and they gave her a book showing the deposit in her name as Mary C. Plackemeier, trustee for Emma Moehlenkamp, John Plackemeier and Mrs. S. B. Forbis. That is the way the book read, and she took that book and from time to time deposits were made in the book. She told Mr. Dowling when she went in there that she had this money and she wanted to put it in the bank and when she died to give it to us children. He told her that was the best way—putting it in this account,

and, that it would be held for that purpose, and that it would be filled out that way, and that we would get it after her death. She never drew any of the money out, but at various times she took her book in and had it credited with the interest as she made her deposits. She never made a special trip down there to have the interest credited. That was done when she made her deposits. She wasn't able to go down so much, but she knew about the interest and all being credited on there. She was told all about that.''

John J. Dowling testified, as follows:

''I remember Mrs. Plackemeier came into the bank and opened this account. As near as I can recall she wanted to open the account with that money, or, to use her own language, to 'do something with it,' and I suggested that in view of the fact that she was blind that she open a savings account with it, and that she appoint somebody as trustee. I told her she could appoint a member of the family. She said that she might not want any of the money, but if she did want some she wouldn't be able to get it. I told her there was only one way to get it and that was by some one acting as trustee, handling it for her, so then I took her over to Mr. Alexander's desk, and Mr. Alexander handled the account from then on. She said she wanted to retain control of it so she could get it if she wanted some of it, but that she didn't think she would want any of it. I explained to her that we were opening up a savings account for her. That is what I suggested to her, and Mr. Alexander really finished up the work. She went to his desk then. I do not recall that I made any statement to her that any one of the bank could act as trustee or anything like that. When she first came in the bank she told me that she had this money, and her purpose in coming there was to leave it with the bank so it would be safe, and to go to certain members of her family when she died.''

Charles G. Alexander testified, as follows:

''I do not recall the opening of this account. It was apparently opened at the savings window. I see the card is written on the typewriter and numbered with the numbering machine, so I assume from our general practice there that this account was opened at our savings window by the savings clerk. So far as the opening of it, I do not recall that at all. I knew the people connected with it quite well, and waited on them when they came in at different times. Mrs. Forbis was always with Mrs. Plackemeier when she came in. They were both together in every case.''

The court below gave judgment classifying plaintiffs' claim as a common or general claim not entitled to priority of payment over other general creditors. Plaintiffs appeal.

In this State the rule is well established that deposits made by fiduciaries are usually considered simply as general deposits, even though the depository has knowledge the funds are trust property

978

and the depositor a fiduciary. The relationship thereby created between the fiduciary and the depository is that of creditor and debtor, and on failure of the depository to repay the deposits the beneficiaries share ratably with other creditors and have no right of priority or preference over the latter in respect of the assets of the depository. [Security National Bank Savings & Trust Co. v. Moberly (Mo.), 101 S. W. (2d) 33, l. c. 36.]

Whether a deposit is made by a fiduciary as such or by an individual as such the presumption obtains that it is a general deposit, and the burden is on him who asserts that it is a special deposit to so show. [Security National Bank Savings & Trust Co. v. Moberly (Mo.), 101 S. W. (2d) 33, l. c. 37.]

It was formerly the rule that, where a deposit, made with a bank as a special deposit, is afterwards commingled with the general funds of the bank and used as its own, so that it cannot be traced and identified, the right of the depositor to have the amount of the deposit out of the assets of the bank was thereby defeated. But this is no longer the rule in this State. Whether or not the bank in fact commingles the deposit with its general funds and uses it as its own is not determinative of the right or not of the depositor to claim the deposit as a special deposit, but it is the right or not of the bank to so commingle and use the deposit that is determinative. If when the deposit is made there is an agreement, express or implied, that it shall not be commingled with the other assets of the bank and used as its own, but shall be kept intact as a separate deposit for a specific purpose, this constitutes a special deposit, and the fact that the bank without right commingles the deposit with its other assets and uses it as its own, so that it cannot thereafter be traced and identified, does not defeat the right of the depositor to have the amount of the deposit out of the assets of the bank. [Security National Bank Savings & Trust Co. v. Moberly (Mo.), 101 S. W. (2d) 33, l. c. 37.]

In other words, if money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes. [Security National Bank Savings & Trust Co. v. Moberly (Mo.), 101 S. W. (2d) 33, l. c. 38.]

The evidence in this case, taken as a whole, shows nothing more nor less than a general deposit in a savings account by Mary C. Plackemeier as trustee, creating a creditor and debtor relation, and not a fiduciary relation, between her and the trust company. She did not make the trust company trustee, but made herself trustee, and as such by making the deposit established a credit with the trust company payable to her during her life or to her children after her death. The evidence does not show any agreement or understanding that the deposit should not be commingled with the other assets of the trust company and used as its own, but well nigh conclusively

shows the contrary. [Security National Bank Savings & Trust Co. v. Moberly (Mo.), 101 S. W. (2d) 33, l. c. 37; Hardin v. Central Trust Co. (Mo. App.), 68 S. W. (2d) 919, l. c. 921; Vandivort ·v. Sturdivant Bank (Mo. App.), 77 S. W. (2d) 484, l. c. 487; City of Fulton v. Home Trust Co. (Mo.), 78 S. W. (2d) 445; Landwehr v. Moberly (Mo.), 93 S. W. (2d) 935, l. c. 938-938; Ellington v. Cantley (Mo. App.), 300 S. W. 529.]

It is clear that plaintiffs are not entitled to a preference, and the court below rightly so ruled.

The commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Becker* and *McCullen, JJ.,* concur; *Hostetter, P. J.,* absent.